May it please the Court, my name is Dimitri Portnoy. I have a Melvyn Ian Myers for Mr. Ruiz. With me is Jason Peng. He will be arguing the question of waiver and exhaustion. I will be arguing the question of Swarthout and Castro. With my argument, we would like to reserve two minutes for rebuttal. With this argument, I'd like to make two points for the panel. The first point is any question regarding the applicability of Swarthout or the extent to which Swarthout rescinds this Court's prior precedent has been resolved by Castro v. Terhune. And the second point is even or that for some reason not the case were the Court to, for instance, credit opposing counsel's argument that it is dicta, it still is the case that Swarthout v. Cook is not clearly irreconcilable with this Court's precedent because it is reasonably harmonizable with this Court's precedent going back to Toussaint v. McCarthy. And so you don't want us to do anything to change Castro? I don't want you to do anything to change Castro. That is correct. Do you think it's dicta? I'm sorry. Do you think it's dicta? I do not believe it is dicta. Why? There are several reasons I do not believe it's dicta. The main reason is that there are at least three statements within the Court, within the decision, where the decision states that it concludes that the district court erred. And it is simply not the language of dicta to state that it is a conclusion to state that it is, nor is it, I believe, the language of dicta to say the district court made an error. And for that matter, it simply is not the case that, you know, it is traditional that in order to get to the applying the sum evidence standard, the Court first had to determine that the sum evidence standard applied. It's the way opinions work, that they develop the standard and they move on. So it was necessary for that decision. And I believe it is currently binding on three judge panels within the Ninth Circuit. Okay. So tell me, why doesn't Castro preclude your claims here? Castro does not preclude, without getting into the evidence here, but for the reasons in the letter briefs, I believe that in this case there was not some evidence with some indicia of reliability. No, you distinguish it based on the difference in the evidence. Absolutely. This is, I believe, and again, I'm not going to get into the specific evidence unless the panel requests me to do so, but this is, I believe, the scantest of records that we have seen among any of the sum evidence cases of this circuit. All right. So what else do you want to talk to us about concerning Castro? Well, concerning Castro, the other thing I would point out as noted is that in Castro there also is an elucidation regarding what the determination is that the State Prison Administrators were required to make. This is in the Void for Vagueness section, and this is something that we brought up in our letter brief that we submitted on Friday, that there are certain, that we now know a little bit more about what it is to be a gang associate, that we know that in order to be a gang associate you need to relate closely, that you need to relate in a way that is standard or uniform, that is repeated. And we also know that a mere social interaction is not going to be sufficient to be a gang associate. And I believe, actually, that because also in Castro there is the statement that the district court is in the best place to review this evidence in the first instance, because we have a slightly new understanding, that in itself warrants a remand to the district court to reconsider this evidence in light of Castro. Let me ask you this. Castro was decided April 5th, right? That's correct. We don't know whether it's going to be reheard in bank or not. I do not. There's been evidence. No one knows. No one knows. Suppose it is reheard in bank and the result changed, then what? Suppose the in bank court were to hold that swath out does away with the some evidence standard. What does that do for you? If it does away with the some evidence standard, then clearly we would not prevail. But... Everything hinges on the viability of Castro, more or less. It hinges on the viability of Castro, but I also believe that were Castro to go to an on bank court, I do not believe the on bank court would likely overturn. But we know. We don't know. But I think that there would be very strong arguments to be made on that side for the reason that there's just such a difference in the kind of determination that is at issue in Swarthout. In that case, we were really dealing with a, as I said, a denial of parole as opposed to, let's say, the revocation of parole, the revocation of good time credits. The analogy that we made in the gray brief was you don't have the constitutional right to own a home. However, once you own a home, you have a constitutional right for it not to be taken without a certain amount of process. You don't have more, as the Supreme Court has held before, you don't really have more than a mere desire to have discretionary parole granted to you. However, you do have an interest in not having an atypical and significant hardship imposed on you once you are in the general prison population. That's Wilkinson versus Austin there. And as a result, you have something in that case. You have your presence in the general prison population, and that is being taken away from you. So I do believe that Swarthout is very distinguishable. And I don't know what the on-bank, what an on-bank panel would do, but I don't believe that we should assume that merely because re-hearing on-bank is granted that CASTRA would be overturned. Okay. I will turn it over to my colleague, Mr. Pink. Thank you. Good morning, Your Honors. My name is Jason Pang, student at the UCLA School of Law and pro bono counsel for Rabin Ruiz. Good morning. The second question before this Court is whether or not a prisoner is reasonably entitled to rely on the representations of a government attorney on behalf of a prison administrator. We urge this Court to answer yes. The PLRA, or Prison Litigation Reform Act, requires that prisoners exhaust all available administrative remedies prior to bringing a Federal action concerning prison conditions. Now, Mr. Ruiz failed to exhaust any administrative remedies prior to bringing his action for his 2005 validation. However, this Court has excused prisoners' failures to exhaust when demanded by justice. In Brown v. Vailoff, this Court held that a prisoner who reasonably relies on the statements of a prison administrator telling him that no more administrative remedies remain does not have to exhaust for the purposes of a PLRA. In this case, Mr. Ruiz's reliance on Deputy Attorney General Cooley's statements are reasonable for three reasons. First, they are verified by an independent third party. In this case, after Deputy Attorney General Cooley told the superior court judge that she believed that Mr. Ruiz did not have to exhaust for the purposes of a PLRA if he went to undergo a second validation proceeding, the superior court judge then reiterated those statements, ending with, that sounds right to me. Second, Mr. Ruiz has previously exhausted all available administrative remedies before. Following his 2000 validation proceeding, Mr. Ruiz exhausted all administrative remedies prior to bringing his superior court habeas claim. Now, this is important because it demonstrates good faith on the part of Mr. Ruiz to abide by the requirements of a PLRA. Sotomayor. Would your – would your – the odd thing here, I think, is that this is the attorney for the other side that is giving this advice. I don't think we have – we don't have any cases in that situation, do we? No, Your Honor. Would you have the same – would you be able to make the same argument if there had been no validation by anyone else as to the soundness of that advice? Well, it would depend on who made those statements. However, the focus in Brown v. Vailoff was on the prisoner and that prisoner's reasonable reliance. So while the person who spoke those statements is, of course, irrelevant to question, the focus more is upon what that prisoner could reasonably rely upon. Yeah, and the question, can a prisoner reasonably rely on the State to tell them what he has to do? A government official. And the answer is yes, for two reasons. First, they were verified by the State. By that lawyer, not just a State official. Correct. Moreover, lawyers have a duty of candor. And while Mr. Ruiz may not know that specific statement, he knows that lawyers swear an oath to uphold the truth and to tell the court truthful things. And if they make mistakes in court, then they have an obligation to fix those mistakes. In this case, Deputy Attorney General Gooley made the statements to Mr. Ruiz in 2005 and for four years, for four years, after 2005 to 2009, after the statute of limitations was exhausted on his 2005 validation proceeding, no one told him that Deputy Attorney General Gooley was wrong, not the CDCR and definitely not the California Attorney General's office. Finally, Your Honors, that third reason, the lack of the lack of effort by the part of the California Attorney General's office and the CDCR to fix the mistake by Deputy Attorney General Gooley is a third reason why Mr. Ruiz's reliance on her statements is reasonable. Now, equity is an extraordinary remedy. However, this is a case providing extraordinary circumstances. We believe that it's highly unlikely, and the lack of case law about waiver of exhaustion demonstrates that it's highly unlikely that any similar case will come before this Court. So, we believe that the lack of effort by the California Attorney General representing the State telling a prisoner pro se that he does not have to exhaust and then telling him his action four years later is moot, that is unfair and deserves equitable treatment. If Your Honors have no more questions on this issue, we request that all available time be saved for rebuttal. Thank you. Roberts. Thank you very much. Good morning, Your Honors. May it please the Court. Deputy Attorney General Scott Fudel, appearing for Defendants Harrison, Hawks and Fisher. The Supreme Court's holding in Swarthout v. Cook reiterates the longstanding principle that when the liberty interest at stake is minimal, the Constitution does not require merits review over a governmental decision. Moreover, remedial suggestions made in a collateral proceeding regarding issues unrelated to this action cannot constitute a waiver of the PLRA's exhaustion requirement. I shall address the Swarthout issue first. In Swarthout, the Supreme Court held that in the parole context, so long as an inmate was provided with a notice and an opportunity to be heard, due process was satisfied, regardless of the evidentiary basis underlying the decision. The same holds true with respect to prison administrative housing decisions for two reasons. First, there's been no Supreme Court decision which requires Federal merits review over prison administrative housing decisions, even under the deferential sum evidence standard. Indeed, when the Supreme Court visited the process required in the administrative segregation context, in the Wilkinson case, the Supreme Court held that the procedures set forth in Greenhalghs and in Hewitt are the appropriate model. Sotomayor Is Castro wrong? Feigin Well, yes, Your Honor. I believe Castro is wrong, both on the facts and also with respect to – it does not address the broader global issue that is raised by the Wilkinson decision. Sotomayor But are we not bound by it? Feigin Well, no, Your Honor, and this is why.  This is why, Your Honor, the Wilkinson decision sets forth the process required for the administrative segregation setting. The Wilkinson decision came out after Toussaint, which is the first case this Court held that some evidence is required for ad sac placement. That decision is clearly – intervening Supreme Court decision clearly irreconcilable with the Toussaint decision. Therefore, regardless of the Castro decision, there's still conflict in the law between Supreme Court authority and this Court's authority. But if we were to hold that, that would be in clear tension with Castro, wouldn't it? Well, it would be in clear tension with Castro, and that's why I think Castro was wrongly decided. It didn't take into context this broader issue, which is kind of catapulted vice versa, but also reaffirmed in other decisions. Kagan But aren't we down by Castro whether it's right or wrong, because we're just another pre-judge panel? Feigin Well, this – in Miller, this Court has held that, in a Monk panel, this Court has held that if the decision is clearly irreconcilable with intervening Supreme Court precedent. Breyer Right, but there's been nothing between this case and Castro that's been intervening by the Supreme Court. Feigin Well, that's correct, Your Honor. Breyer And that's what the language of Miller means. Feigin Well, what I'm trying to explain to the Court is that the Castro decision does not visit the issue raised by Wilkinson and by Hewitt. That's still very respective of Castro. The Castro decision only distinguishes without honest facts. So – Roberts Your office handled Castro as well, didn't it? Feigin I'm sorry, Your Honor? Roberts Your office was a lawyer for the defendants in Castro? Feigin That's correct, Your Honor. Roberts Do you know what the status of rehearing is on Castro? Feigin I understand that there has been a motion for an extension of time to seek petition on Bonk, but that's – I don't know if that has been granted yet, but that has been submitted. Breyer So assuming that we're bound by Castro, how do you distinguish? I mean, is there a means for distinguishing? Feigin Well, there's also a factual distinction in Castro, Your Honor. And that has to do with the pre-judge panel in Castro held that the sum evidence standard was merely a State – California State standard, and the Supreme Court in Swarthout never visited the sum evidence standard required as a matter of Federal law. I would invite the Court to look at a footnote in Swarthout which shows that the California standard is actually – the sum evidence standard is the same standard that is set forth under Hill. It used the Hill standard as a means for determining whether a parole suitability decision sufficed under the Constitution. So the standards really are one and the same. The Supreme Court was determining in Swarthout whether Federal – the Federal Constitution requires sum evidence review in the parole context. And, you know, as I stated earlier, the Supreme Court held that the only process that is required is notice and an opportunity to be heard in that case. And Wilkinson states that Greenholz is the appropriate model, and that's the same model the Supreme Court used in Swarthout. So it logically follows, Your Honors, that if sum evidence isn't required in the parole context, which is a heightened liberty interest, it certainly wouldn't be required in the administrative segregation context. And that's especially true when you consider that in the Hewitt decision especially and in Wilkinson, the Supreme Court repeatedly stated that the liberty interest in avoiding – in being released from confinement is greater than the liberty interest in being placed in more secured housing. So, you know, and as the Court has held and the Supreme Court has held in Matthews, you know, the process ebbs and flows. Due process is not the same for all. Obviously, in a criminal proceeding, you're entitled to much more heightened process than you would be in an administrative setting. And so if the process required for the parole setting is notice and opportunity to be heard, clearly the process for a much more diminished liberty interest would not be heightened. It would be less. So it logically follows, Your Honors, that Toussaint is no longer good law, and the Federal court really should not be reviewing the merits of the decision, even as a procedural component of due process. Well, I'm just skimming the brief that your office filed, and Castro and Wilkinson decided, so you can't say the other panel didn't consider it. Well, I don't – I don't know, you know, the only thing I have, of course, to go off is the footnote in Castro, and it seems that the basis of the panel's decision was the factual distinction between Swarthout and – and really – Right. But, I mean, to the extent you're arguing that the Castro panel didn't – wasn't aware, Wilkinson didn't consider it, I'm just looking at your brief and that your You may have cited it, didn't mean they considered it, right? Yeah. Let me ask you this. Suppose we – suppose we say, look, Castro's the law of the circuit for the time being, like it or not. We apply the some evidence standard, then our next step in this case would be to say, is there some evidence, right? That's correct, Your Honors. If there is some evidence, you win, they lose, and that's the end of it, and we sort of don't have to worry about the Castro issue. The Castro panel can worry about the Castro issue. That is correct. I'm not worried a bit about the Castro issue. Certainly, if the court finds that Castro is controlling this issue, has already been visited, then some evidence standard would apply and, you know, the court would review the record for some evidence in this case. And as we argue in our supplemental briefing without getting into the specifics of the evidence, Castro clearly shows that, you know, some evidence exists here, given the similarities between the points of validation used in Castro and also in this case. One thing I would like to discuss also, Your Honors, is the exhaustion issue raised by counsel. The PLRA requires, of course, that inmates exhaust all available administrative remedies before filing any papers with the court. And Plaintiff has admitted he has not done so, but argues that he's excused based on a remedial suggestion made by a State attorney in a collateral proceeding. Plaintiff's incorrect for the following reasons. First, the holding in Brown is factually distinguishable, and it would be inequitable to extend it here. Really, I request that the court look at the record, because the habeas proceedings at that point in the prolonged process there were really dealing with procedural issues, notice and opportunity to be heard. The issue regarding the inmate's underlying validation had already been determined to be constitutionally sufficient. And it's reflected in Ms. Hooley's statements in the record. All that the court was concerned about at that time was whether Mr. Ruiz got a notice, fair notice and opportunity to be heard, and there was an evidentiary hearing on it, and the Attorney General suggested it looked like the evidentiary hearing did not go well for our side. So the attorney suggested that as a remedial measure, they would have a new validation. The inmate would get his opportunity to be heard, and if he was displeased with that, he could come back to court through what she called an expedited habeas petition without having to first exhaust his administrative remedies. But the merits of the 2005 validation were never contemplated. They were never discussed in that proceeding. So it's not reasonable for Mr. Ruiz to have believed that that issue was waived, that this new legal issue that hadn't been contemplated in the proceedings was somehow given up. Does the exhaustion issue go only to two of the defendants? I'm sorry, Your Honor? Does the exhaustion issue go to only two of the defendants? That's correct, Your Honor. The exhaustion issue involves the revalidation, which involves two different defendants than the defendant who initially validated Mr. Ruiz. Well, why aren't you judicially astounded from making that argument now? I mean, leaving aside waiver, you've represented to a court that this is the way the procedure ought to go. Why doesn't judicial estoppel apply? Well, Your Honor, I think it's a slippery slope to apply that. I mean, if we have on, you know ---- Slippery slope leading to what? Well, leading to kind of an evisceration of the exhaustion requirement. If you have judicial estoppel in this instance, what would be to foreclose the court from requiring or holding that judicial estoppel applies to the correctional process? I mean, we can't just go out and walk by an inmate's cell and say, you know, you don't need to exhaust that issue. You can just go file with the courts. No, that's a whole different ---- that's a whole different question. I mean, we're talking about a representative of the state who stands up in court and says, look, we're agreeable to an expedited procedure. And the court says fine, sounds right, or whatever the court said. That's a whole different level of representation than the casual remark, I think. Sure, Your Honor. I mean, we have to take what you say seriously. We have to take representations from the state. And it's to your benefit, because a lot of times we take representations from your office or from any federal office, a similar federal office, and say, all right, that's good enough for us. Of course, Your Honor. I respect that. I understand that. We don't require you to submit anything further. We just take your word for it. So that's the slippery slope going the other direction, it seems to me. Of course. But, I mean, in this case, you really need to look at the facts that was underlining that proceeding. And what Mr. Ruiz, sitting in the courtroom or on the phone, I'm not sure how he was attending it, could have reasonably believed. And if the whole proceeding was focused on whether he received notice and opportunity to be heard, it isn't reasonable for him to assume that if his validation, his second validation, considers additional evidence, that somehow he doesn't need to exhaust this new issue that's not ever – that wasn't even a part of the habeas proceedings up until that point. I mean, for example, if something different happened in this, the validation context, during the revalidation, let's say an officer used more force than he thought was necessary for some reason, would the inmate be excused from exhausting that issue, even if it happened in the context of the hearing where the revalidation was taking place? It's hard to – really, you need to look at the focus of the underlying proceeding and what the inmate, at that point, when that representation was made, could have reasonably understood it to encompass. Well, so what the State wants us to do is say it's not exhaustive, go back and exhaust, and let's hear the case again? Well, that's correct, Your Honor. I mean, that's really what the PLRA requires. Do you think the case is so strong that the administrative process might yield a different result on remand? It's hard to say, Your Honor. I don't know. I mean, you know, the regulations have changed a bit as far as what officers can consider and cannot consider. So I don't know. I don't want to speculate. But it certainly is what Congress intended to happen. And that's the remedy you want. You want us to send it back down for a lack of exhaustion, have the prisoner exhaust his remedies, and go back to court? Well, yes, Your Honor. That is – That's one of your theories, right? You have better theories than that. You would just as soon uphold it as is, wouldn't you? Well, yes, Your Honor. I mean, of course – We don't really want to have this happen all over again. These are alternative arguments you are making. This is an alternative argument. As I stated to the Court before, there are other ways the Court can decide the revalidation without invisiting the exhaustion issue. One is whether it's foreclosed by cashback. Right, right, right. And also there's another motion before the Court which can decide this issue also. And I won't go into that at all. Well, let me ask you this. Do you view – I assume then you don't view the lack of exhaustion as a jurisdictional defect in this appeal? No, Your Honor. I mean, the Supreme Court has been clear it's an affirmative defense. And this Court has as well, not a jurisdictional defect. But as I stated, I mean, the Court should really consider the record and look at the context of that hearing in deciding whether or not Mr. Ruiz exhausted. One thing I should point out to the Court in context with exhaustion, I believe this case is analogous to the Harvey case, although it doesn't appear like it is initially, where this Court felt that the inmate was granted – the inmate was granted relief at a lower level of review. And he never got it, essentially. And the Court found that he was – that he was exempt from exhausting, that that was sufficient. He got the relief that satisfied him. Here, the same happened for Ruiz. He was given the relief, offered the relief. He was requesting the habeas proceedings, which is notice and opportunity to be heard. There was no mention of new evidence or a chance to challenge new evidence. So it wouldn't be reasonable for him to assume that that issue had been exhausted. So for the foregoing reasons, defendants respectfully request that the Court modify the district court's judgment in light of Swarthout and dismiss Ruiz's claims with prejudice. Alternatively, defendants request that the court's judgment be affirmed. Unless the Court has any further questions, defendants will rest. Roberts.  Thank you, Your Honors. Your Honors, I just want to make a few points in response. The first point I'd like to make in response is Mr. Fidele referred to the liberty interest here as numble. There are two things. The extent of the liberty interest has actually not been litigated in this case because it was either assumed or conceded to be a significant liberty interest by all sides at the district court. If the liberty interest is suddenly at issue, that's something that we could on remand take evidence as to the conditions at Pelican Bay, compare them to the conditions that are the normal incidents in a California prison, and see if it's an atypical or significant hardship. We know from Wilkinson v. Austin that an extremely comparable situation in the Ohio Supermax prison was deemed an atypical and significant hardship. And the Supreme Court there did not even determine what the baseline was in the Ohio prisons because they said that solitary confinement of this sort is an atypical, significant hardship, a significant liberty interest as compared to any prison baseline, any plausible prison baseline. And I think that it is not – it does not make sense to consider that the California prisons are implausible. With respect to Wilkinson v. Austin, we did not get a chance to brief the issue that Wilkinson v. Austin is intervening authority because it actually has only been raised by opposing counsel for the first time in a supplemental letter brief. I would argue that that is waived in this action, although it is cited in their brief. It is not phrased as intervening authority. But in Wilkinson v. Austin, they only were reviewing whether – when the district court added four specific new procedural requirements, that was required by due process. They didn't think about some evidence because that wasn't something that was brought up. In fact, it was a class action facial challenge. Thinking about individual prisoners' sum evidence requirement in subsequent judicial review was simply not on the minds of the justices at that time, and it wasn't in the briefing. Also, it was referred to the sum evidence standard as a State standard in this. I disagree with that. In fact, the State standard is significantly higher than what we are dealing with here on Federal review. The State standard requires three pieces of evidence. If you go back and read Section 3378, it's quite prolix. I think it is the case that Suarez L. V. Cook said that the sum evidence standard is what is applied in parole denial, but I actually think that's fully distinguishable, and I don't believe, to Sandy McCarthy, either in 1986 or 1990, or any of our – any of this Court's decisions has ever held that the reason that we apply sum evidence standard is because that's the State standard. Turning to the waiver and exhaustion issue, there's the – So why don't you want a second bite at the apple, turning the discussion around? If we went on the alternative theory, then you get a second chance in the administrative process. In terms of what I'm talking about, waiver and exhaustion here. Well, to be honest, I think that such a process would be exceedingly strange. One thing to understand – And because events have unfolded differently? Well, because events have unfolded, but the specific events that have unfolded, to understand that what actually happened here is he had his initial validation, was allowed to skip the administrative process, and then went to State court. In other words, what we're saying is if there's a five-step appeal process, he was allowed to skip steps two and three, and then did steps four and five. It just is exceedingly strange to say, let's go back and do steps two and three again, when we've already had a – But getting into the specifics, there wouldn't be any real point in sending it back, now, would there? I don't believe there would be a point. I would also point out, as well, that sending it back would potentially – would almost certainly result in his claims being barred by the statute of limitations on his 1983 claims. Unless they were told. Unless we know they were told. Unless they were told, but – Well, let me ask you this. I mean, do you think, like, a damage claim needs to be administratively exhausted? That is something that, you know, some discovery would have to be brought. I would point out that, Ed, this is a point that we made in our opposition to the motion to dismiss, and I'm not going to discuss any confidential information. It's simply that, at this point, all the – all this panel needs to decide, all this court needs to decide, excuse me, is that nominal damages are available. And at that point, that – there's a – there's a sufficient claim. Yeah, no, my question was somewhat different. I mean, do you view a damage remedy as something that needs to be exhausted in any case? Well, I believe that the Prison Litigation Reform Act has required all such claims to be exhausted in some form. However, again, the case law has held that the equitable remedy – that there is an equitable remedy of waiver. And this is a situation where we really shouldn't be thinking about what, you know, what was in the mind of Deputy Attorney General Hooley or a lot of the stuff that Mr. Fugate was talking about. It really is reasonable reliance. It's a question of what Mr. Hooley heard and what a reasonable inmate in his position would have believed. And unless the panel has any further questions, my light is red. Thank you very much. We want to thank you for your pro bono representation. We want to thank all counsel for their professionalism in presenting this matter. And we realize we bounced around setting the hearing date, and you've been very patient with us. So thank you all. Thank you, Your Honor. The case just heard will be submitted for decision.
judges: Schroeder, Thomas, Silverman